**DUFFY–MOTT CO., Inc., v. BLAIR, Commissioner of Internal Revenue, et al.**

**HILDICK APPLE JUICE CO. v. SAME.**

(District Court, S. D. New York. January 19, 1922.)

Intoxicating liquors ⬥134—Preserved benzoated sweet cider within exemption in National Prohibition Act; "vinegar and preserved sweet cider."

On October 28, 1919, 90 per cent. of all the sweet cider sold in the United States was preserved by a small amount of benzoate of soda, and such cider, due to natural causes, would develop an alcoholic content in excess of one-half per cent. but would become nauseous before it became intoxicating. *Held,* that such cider is within National Prohibition

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Act Oct. 28, 1919, tit. 2, § 4 (f), exempting from the provision of that act "vinegar and preserved sweet cider," prepared for market.

In Equity. Separate suits by the Duffy-Mott Company, Inc., and the Hildick Apple Juice Company, against David H. Blair, as Commissioner of Internal Revenue, Roy A. Haynes, as Federal Prohibition Commissioner, and Ralph A. Day, as Federal Prohibition Director for the State of New York. Decrees for complainants.

See, also, 269 Fed. 184.

Duffy-Mott Company, Inc., and Hildick Apple Juice Company, Inc., applied to the federal prohibition director of New York for permits to manufacture and sell preserved sweet cider consisting of fresh apple juice preserved by the addition thereto at the time of production of not to exceed one-tenth of one per centum of benzoate of soda. Duffy-Mott Company, Inc., stated that when so manufactured the preserved sweet cider contained less than one-half of one per centum of alcohol, but that it did not insure that the alcoholic content would remain below that amount, but, due entirely to natural causes, such preserved sweet cider would develop an alcoholic content in excess of one-half of one per cent. Hildick Apple Juice Company, Inc., stated that when so manufactured such preserved sweet cider would contain more or less than one-half of one per centum of alcohol, depending upon the alcoholic content of the pure juice in the apple prior to being expressed and also upon other natural causes. And upon the refusal of the director to grant such permits unless the applicants would guarantee that the alcoholic content of such preserved sweet cider would not at any time exceed one-half of one per centum by volume they filed petitions in equity in the United States District Court for the Southern District of New York pursuant to the provisions of section 5 of title 2, of the Volstead Act (41 Stat. 305). permitting manufacturers by proper proceedings in courts of equity to review the action of the prohibition commissioner.

The petitions similarly set forth the respective products of the complainants and prayed for the reversal of the commissioner's action and the granting of such permits.

Defendants moved to dismiss these petitions, which motions were denied by Judge Augustus N. Hand (269 Fed. 184) with permission to defendants to plead over. Defendants then answered denying that complainants' products were preserved sweet cider within the true intent of the Volstead Act.

Abraham S. Gilbert, of New York City (Wm. W. Armstrong, of Rochester, N. Y., of counsel), for plaintiffs.

Wm. Hayward, U. S. Atty., and John Holley Clark, Jr., Asst. U. S. Atty., both of New York City, for defendants.

LEARNED HAND, District Judge. In my judgment the case comes down to this: If, in subdivision F of section 4, the words "preserved sweet cider" include benzoated cider, that is, cider preserved with benzoate of soda, then it appears to me, for reasons I shall give in a moment, that the plaintiff must succeed. This is precisely the conclusion to which Judge A. N. Hand came in the argument on the demurrer. The reason why I say this is as follows: "Preserved sweet cider" may be held, and perhaps should be held, to include all ciders which were preserved and upon the market on October 22, 1919. Even so, the phrase includes only pasteurized sweet cider and sweet cider preserved by an injection of a small portion of benzoate of soda. Assuming this to be the proper construction of the term, it therefore included two classes, of which the Commissioner's regulation has now outlawed one. I say he has outlawed it, because he has annexed a con-

dition to its sale which every one agrees cannot be fulfilled. In order to fulfill it, the cider maker must abandon benzoate of soda and pasteurize his cider; i. e., he must confine himself to one of the two classes covered by the phrase at the time the statute was passed. Yet if both of these sweet ciders are included in the exception, the Commissioner by a regulation cannot thus absolutely outlaw one of them; power to regulate he still has, and that power undoubtedly includes power to attach conditions to the making of cider, but the conditions must not be such as withdraw the permission which the statute itself gives. That is so obvious that it is hardly necessary to say it.

If all this is so, then the question is simply this: Does the phrase "preserved sweet cider" in the statute include apple juice which is preserved temporarily, by the infusion of benzoate of soda? I think, in view of all the evidence here, it is not too much to say that there is not the least shadow of a doubt that the phrase does include this kind of sweet cider; and that at the time the statute went into effect, benzoated sweet cider included 90 per cent. of all that was sold in the United States. There has been no dispute of that. Indeed, all cider sold in bulk is preserved by benzoate of soda, and when the statute used that phrase it would be preposterous to suppose that they meant to protect only one-tenth of the total output and to outlaw nine-tenths, especially that which was the cheapest in its manufacture, and which presumably went to the body of the people at large. The lawmakers were intent, rightly or wrongly, upon protecting the industry, and they meant, for reasons which no doubt were good, to allow the sale of sweet cider, as the market then knew it; that is, of the substance with which the market then was familiar under that or any other name.

It further appears in this case, although I do not think it was essential that it should, what were the reasons which led them to make that exception. It appears that by no possibility can this substance become an intoxicant; long before it can become such, it is nauseous. Probably even a confirmed drunkard would not be able to get the intoxication which he demands out of it; his stomach would scarcely tolerate enough to extract the alcohol from it which he craves. Therefore it is quite clear why Congress thought they could safely give an unconditional permission for its sale. I do not mean by unconditional that the manufacture must be unregulated; section 4 quite clearly shows that it is to be subject to regulations. But all such must fairly tend to one end alone: That there shall be sold only that substance which the trade has been accustomed to buy and sell as sweet cider. Without some regulations, the makers might sell hard cider, and that would be an intoxicant which the statute forbids. The scope of the Commissioner's power is confined to securing this end. The plaintiffs indeed concede that they are subject to such regulation. The power so to regulate must, however, be subject to the purposes of the statute, and those purposes protect the sale of benzoated sweet cider.

For these reasons the plaintiffs may take decrees.